FRANK. H. STOCKETT, JESSE SLINGLUFF, and others, *vs.* MARIA E. HOWARD.

AUGUSTUS MATHIOT, Trustee, &c. *vs.* MARIA E. HOWARD.

*Judgment Liens as Affecting Leasehold Estates — Construction of the Act of 1861, ch. 70 — Lien Lost by Laches — Covenants running with the Land — Priority of a Mortgage on Leasehold estate, to an Antecedent Judgment not enforced until the Expiration of the lease.*

G held a lease of land for years, ending in July, 1869, with covenant for compensation for his buildings and improvements. At sundry times, during his term, judgments were obtained against him. In January, 1869, he mortgaged to H his term " with the buildings, improvements, rights, estate and interest therein." In June, 1869, G purchased the reversion, $5,000, being settled as the value of his improvements. After the expiration of his term, his judgment creditors purchased at sheriff's sale, under their executions, all the interest of G in the premises. In a suit between the judgment creditors and the mortgagee, as to their respective titles to the fund of $5,000, it was HELD:

1st. That the judgment creditors having suffered the term to expire before selling it under execution, had lost the liens given them by the Act of 1861, ch. 70.

2d. That the covenant to pay the lessee for improvements ran with the land, and the judgment creditors were not entitled to the sum fixed on as the value of such improvements.

3d. That by the mortgage G assigned the residue of his term, with all his interest therein, to the mortgagee, and the mortgagee was entitled to have the sum due for improvements applied to satisfy the mortgage.

APPEALS from the Circuit Court of Baltimore City.

Augustus Mathiot, trustee, and Susan M. Gale, afterwards Anspach, being joint-tenants of certain lands, demised a portion thereof to Archibald C. Gibbs for a term of eleven

years, ending July 31st, 1869. The lease contained. a covenant, that the lessee, at the end of his term, should be paid for his buildings and improvements, their value to be settled by arbitration. At sundry times, from 1862 to 1868, judgments were recovered against Gibbs by various parties. On the 9th of January, 1869, Gibbs executed a mortgage to Mrs. Maria E. Howard of his term, with "all the buildings, improvements, rights, estate and interest therein." Under proceedings for partition, to which Gibbs' lessors were parties, a decree was passed for the sale of the lot in question, and, before the sale, by agreement between Gibbs, the representative of the lessors and the trustee, the value of the improvements upon the demised premises was fixed at $5,000. The sale took place on the 3d day of June, 1869, and Gibbs became purchaser of the reversion. Subsequently to the expiration of the term, certain of the judgment creditors issued execution on their judgments, and laid them on Gibbs' interest in the premises beforementioned, and on the 23d of February, 1870, the same was purchased for them at the sheriff's sale by Frank. H. Stockett, Esq., one of the appellants.

Other pertinent facts will be found in the opinion of the Court.

The causes were argued before BARTOL, C. J., STEWART, BRENT, GRASON, MILLER and ROBINSON, J.

*Thales A. Linthicum* and *Frank. H. Stockett,* for the appellants, Stockett and others.

The covenant contained in the lease to Gibbs was a mere personal collateral covenant, in no wise concerning the land. *Grey vs. Cuthbertson,* 4 *Doug.,* 351. The covenant is simply for a submission to arbitration, and is therefore collateral. *Glenn vs. Canby,* 24 *Md.,* 127. Taking it as a covenant for a valuation by arbitration, it is not a *chose in action* assignable under our Act of Assembly. Under the decision in *Dakin vs. Pomeroy,* 9 *Gill,* 1, taking it as containing an agreement

for the payment of money, it is still not one of that class of *choses in action* which are intended by the Act. But even if it were such a *chose in action* as is assignable under our Act of Assembly, there are, in Mrs. Howard's mortgage, no apt words to pass it. Hence, the interest in the covenant at the time of the sale by the trustee, was in Gibbs, and he had a right to appropriate that interest to the purchaser of the fee-simple. But so soon as he acquired the fee-simple, the judgments of the appellants bound it at once.

But, assuming that the covenant runs with the land, the appellants are still entitled. The judgments bound the leasehold estate of Gibbs, and every parcel of it. The lien is co-extensive with the right to sell. Hence the lien bound the covenant equally with the land, even if they are to be considered distinct.

Were the appellants bound to issue execution? The notion of a lien is an obligation or claim annexed to some particular subject, without satisfying which the owner cannot have his property. There can be no pretence of *laches* against the judgment creditors. They certainly by no act of theirs surrendered their lien. *Thomas vs. Vonkapff,* 6 G. & J., 372; *Johns vs. French,* 1 *Hogan,* 450.

*James Frame,* for the appellant, Mathiot.

*Robert A. Dobbin* and *Thomas Donaldson,* for the appellee.

The residue of the term, and also the benefit of the covenant of the lessor to pay for the value of the improvements, passed to the appellee by virtue of the conveyance from Gibbs of January 9th, 1869. *Lametti vs. Anderson,* 6 *Cowen,* 302; *Thompson vs. Rose,* 8 *Cowen,* 266.

The judgment creditors could not obtain any lien on the proceeds of the sale because the covenant, even if connected with a freehold estate, could not be the subject of a lien of a judgment, nor could it be sold in execution. It is a *chose in action* and not an interest in land. A covenant running with

.Stockett, *et al. vs.* Howard.   Mathiot, Trustee, *vs.* Howard.

the land is still a personal covenant, and the right of action for its breach sounds in damages.   1 *Smith's L. C.,* (*Am. Ed.,* 1852,) 155; *Coombs vs. Jordan,* 3 *Bland,* 284.

If such a covenant in a conveyance of freehold was an interest in lands and subject to the lien of a judgment, yet, in a lease, no such covenant could be subject to such a lien prior to the Act of 1861, for the leasehold interest itself, to which the covenant was an incident, was not subjected to it.   This Act merely extended the lien of a judgment to leasehold estates; and being an amendment of the common law, ought not to be extended beyond the meaning of its language. 1 *Sup. Code, Art.* 29, *sec.* 20; *Dwarris on Statutes,* 695, 712.

Even if the judgments bound the leasehold interest, and the covenant as incident to it, yet, when the leasehold interest expired, the lien was gone.

GRASON, J., delivered the opinion of the Court.

The controversy in this case originated in the conflicting claims of the appellants and appellee to the sum of five thousand dollars, which was distributed to A. C. Gibbs. by the auditor's account in the case of *Anspach and others vs. Richardson and others,* pending in the Circuit Court for Baltimore city.   Gibbs held a lease for eleven years, from the 31st of July, 1858, on certain land at Galesville, in Anne Arundel county, and in the lease was a covenant that the lessors, and those claiming under them, would pay to the lessee, and those claiming under him, the value of the improvements put upon the demised premises during the term, to be ascertained by arbitration at the expiration of the term.   In the case of *Anspach vs. Richardson,* a decree was passed for the sale of the real estate in the proceedings in that cause described, of which the land leased to Gibbs formed a part, and is designated as lot No. 2 in the trustee's report.   The parties to that cause being apprehensive that this lot would not sell for its full value, if the claim of Gibbs for improvements should remain unascertained at the time of sale, entered into an

agreement with Gibbs by which the value of the improvements was fixed at five thousand dollars.  At the trustee's sale, Gibbs became the purchaser of lot No. 2 for six thousand five hundred dollars, and the parties to the said cause, the trustee and Gibbs, executed a written agreement fixing the value of improvements at five thousand dollars, and stipulating that said sum should be allowed as a credit upon his purchase, and that the agreement thus made, should be submitted to the Court for its approval, and it was accordingly reported to, and ratified by the Court.  A number of parties obtained judgments against Gibbs from the year 1862 to 1869, upon some of which executions were issued and levied upon the term of Gibbs in lot No. 2, and upon others of which attachments were issued and laid in the hands of the trustee.  In January, 1869, Gibbs executed a mortgage to the appellee of his term, together with the "buildings, improvements, rights, estate and interest therein."  The judgment creditors and the appellee filed petitions, with copies of the judgments and mortgage in the case of *Anspach vs. Richardson,* the former claiming that the sum audited to Gibbs should be distributed to them according to the priority of their judgments, and the latter, consenting to the ascertainment of the sum for improvements, but claiming that she was entitled to it under her mortgage.  Mathiot, as trustee of Georgetta M. Gale, also filed his petition, setting forth that there was a balance of rent for the demised premises, due by Gibbs, and asking that so much of the five thousand dollars as was necessary for that purpose, be applied to the payment of the rent.  Various other proceedings were had in the case, which it is not material to notice.  All the judgment creditors, except Bucey, issued executions upon their judgments, and under them the interest of Gibbs in the demised premises was sold by the sheriff, and was purchased by Frank. H. Stockett, Esq., for them.  They then filed another petition in the same equity case, alleging their purchase of all of Gibbs' interest in the premises, and praying to be sub-

stituted in his stead, and to be permitted to comply with the terms of the trustee's sale. Upon final hearing, the Court below passed a decree allowing the claim of the appellee under her mortgage, in preference to the claims of the judgment creditors, and rejecting the claim for the balance of rent due Mathiot as trustee. From this decree the judgment creditors and Mathiot appealed.

In the argument of the case in this Court, it was contended by the counsel of the judgment creditors, that their judgments were liens upon the term of Gibbs in lot No. 2 under the Act of 1861, chapter 70, as also upon his interest in the improvements, and that, having purchased all his interest at sheriff's sale, they were entitled to have the sum allowed for improvements, applied to the satisfaction of their judgments. It was also contended that the judgments, being prior in date to the mortgage, the mortgagee took the estate of the mortgagor subject to their liens. It is true that the judgments were liens upon the term of Gibbs under the Act of 1861, and during the continuance of the term, the residue, then unexpired, might have been levied upon and sold to satisfy them. Had this been done, the purchaser at such sale would have acquired the residue of Gibbs' term, and, as incident thereto, all his interest in the improvements. The covenant to pay the lessee and his assigns the value of the improvements, was a covenant running with the land, and would have passed to the purchaser, as an incident to the term. *Lametti vs. Anderson,* 6 *Cowen,* 308; *Thompson vs. Rose,* 8 *Cowen,* 268.

But the judgment creditors did not sell under their execution until the term had expired by the limitation contained in the lease, and after it had been assigned by the mortgage to the appellee. The appellee took the term under her mortgage subject to the liens of prior judgments; but as they were liens upon the term only, they ceased to be liens when the term expired. The covenant to pay for improvements

was a mere incident to the term ; a *chose in action*, upon which the liens of the judgments could not attach, and which could not be taken in execution and sold. The judgment creditors, having suffered the term to expire before selling under their execution, have lost the liens given them by the Act of 1861, and are not entitled to the sum fixed upon as the value of the improvements upon the demised premises. By the mortgage Gibbs assigned the residue of his term, with all his interest therein to the appellee, and she is therefore entitled to have the sum due for improvements applied to her mortgage.

But it was contended that the mortgage is void for want of proper and legal stamps. A mortgage is not required to be stamped when the notes are stamped, to secure the payment of which the mortgage is given. Three of the notes, to secure the payment of which the appellee's mortgage was given, were for the sum of four thousand five hundred and eighteen dollars, and were given to Hamilton S. Howard in 1866, and it is fair to presume that those notes were duly stamped in accordance with the requirements of the Act of Congress, and the mortgage being sufficiently stamped to cover the remainder of the debt we think it is sufficiently stamped; and therefore it is unnecessary to decide whether or not a mortgage, which has not been stamped in accordance with the provisions of the Act of Congress is void.

The respective counsel of Mathiot, trustee of Georgetta M. Gale, and the appellee having filed a written agreement in this Court that the appeal of the former shall be dismissed without prejudice, in case the decision of this Court shall be in favor of the title of the latter to the fund in controversy, it becomes unnecessary to decide the question raised by his appeal.

The decree of the Court below, so far as it gives a preference to the mortgagee over the judgment creditors to the fund in question will be affirmed, and the appeal of Mathiot dis-

missed without prejudice, under the agreement above referred to, and the cause remanded for further proceedings in conformity with this opinion.

> *Appeal of Mathiot, trustee, dismissed without prejudice, and the decree of the Court below, so far as it determines the rights of the judgment creditors and the mortgagee of A. C. Gibbs, respectively, affirmed, and cause remanded.*

(Decided 17th February, 1871.)