JOSEPH M. HOLLYWOOD & another, executors, vs. FIRST
PARISH IN BROCKTON.

Plymouth.    April 2, 1906. — June 19, 1906.

Present: KNOWLTON, C. J., MORTON, LORING, BRALEY, & SHELDON, JJ.

*Practice, Civil,* Agreed statement of facts.  *Landlord and Tenant,* Assignment,
Covenant of lessor.  *Covenant.  Religious Society.  Corporation, Ultra vires.
Words,* "Lessees."

If an agreed statement of facts states that a certain parish made a lease "of a
vacant lot of land," and it appears by the lease, a copy of which is annexed to
the agreed facts, that the land leased was a portion of a lot of land owned by
the parish and called the Parish Green, and that "the old meeting house now
standing thereon" was sold by the parish to the lessees for a sum named, these
statements in the lease contradict and control the statement in the agreed facts
that the lot was vacant.

If an agreed statement of facts states that a certain person was a sublessee of
a part of certain land "for a time equal to the remainder of the term of the
original lease," this in legal effect is a statement that the person named was
an assignee of the lease as to the portion of the premises stated to be sublet
to him.

One who acquires the whole estate of a lessee of land in a portion of the land
covered by the lease is an assignee and not a subtenant.

A covenant in a lease of land with the lessees and "their heirs and assigns" that
at the termination of the lease the lessor or its successors will extend the lease
to the lessees "or their heirs and assigns on reasonable terms for a reasonable
time, or pay to them, . . . and their heirs or assigns a just and reasonable sum
for such buildings and improvements as they, the said lessees may have put
thereon," includes not only payment for buildings put upon the land by the les-
sees personally but also for those put there by a subtenant or an assignee, and
the covenant being made with the lessees and their assigns runs with the land
under the rule laid down in the second resolution in *Spencer's case,* 5 Coke,
16 a, b.

Where a religious society has no further use for an old meeting house and the land
on which it stands, abutting on a business street, it is not *ultra vires* for the
society to let the land to a lessee who agrees to buy the meeting house and to
covenant to pay to such lessee or his assigns on the termination of the lease a
just and reasonable sum for such buildings and improvements as shall have
been put upon the land during the term of the lease.

CONTRACT by the executors of the will of Peter F. Hollywood,
on a covenant contained in a lease by the First Parish in North
Bridgewater, afterwards the First Parish in Brockton,* to Win-

---

* By St. 1874, c. 113, the town of North Bridgewater was authorized to
change its name to Brockton, and on May 5, 1874, voted to take that name.

throp S. Baker and Rufus P. Kingman, dated March 21, 1854, for the term of fifty years, the administrator *de bonis non* of the estate of Baker and the executor of the will of Kingman on March 15, 1904, having assigned a portion of the premises and rights included in the lease to the plaintiffs' testator, who erected on the portion of the premises assigned to him a building costing $5,000 and worth at the time of the expiration of the lease $4,000, the covenant sued on being as follows: " And the said Parish further agrees and covenants to and with said Baker and Kingman, their heirs and assigns, that when this lease shall have terminated they, the said Parish or their successors will then extend the lease thereof to the said Baker and Kingman or their heirs or assigns on reasonable terms for a reasonable time, or pay to them, the said Baker and Kingman and their heirs or assigns a just and reasonable sum for such buildings and improvements as they, the said lessees may have put thereon." Further alleging that the defendant refused to extend the lease or to pay to the plaintiffs' testator a just and reasonable sum for the buildings and improvements put by him upon the premises. Writ dated May 16, 1904.

In the Superior Court the case was submitted upon the following agreed statement of facts :·

On March 21, 1854, the defendant, then the First Parish in North Bridgewater, executed and delivered to Winthrop S. Baker and Rufus P. Kingman, their executors, administrators and assigns, a lease of a vacant lot of land situated on the west side of Main Street in Brockton, owned by the parish and called the "Parish Green," for the period of fifty years from the date of the lease. A copy of the lease was annexed marked A.

Before the year 1904 Winthrop S. Baker died, and Fred Southworth was appointed administrator *de bonis non* of his estate. Also before the year 1904 Rufus P. Kingman died, leaving a will, and Fred B. Howard was appointed executor thereof.

On March 15, 1904, Fred B. Howard, executor of the will of Rufus P. Kingman, and Fred Southworth, administrator *de bonis non* of the estate of Winthrop S. Baker, assigned to Peter F. Hollywood, the plaintiffs' testator, his executors, administrators and assigns, the following described portion of the

hereditaments and premises comprised in and demised by said lease from the defendant:

"A certain lot of land on the West side of Main Street in said Brockton, bounded North by land occupied by the First Parish in Brockton, East by Main Street, South by Green Street and West by land occupied by L. W. Puffer. The West line of the above described lot being eighty (80) feet Westerly from Main Street."

A copy of the assignment was annexed marked B.

For more than thirty years before March 15, 1904, the date of the assignment of the lease to Peter F. Hollywood, he had been sublessee under Baker and Kingman for a time equal to the remainder of the term of the original lease, and had built upon the premises a building the fair value of which, in connection with the land, at the time of the expiration of the lease was $3,267.98, and $100 in case the building should be removed.

The demised premises are situated on the principal business street in Brockton, in the centre of the business part of the city. They are nearly rectangular in shape, measuring about twenty-seven feet on Main Street and eighty feet on Green Street.

The lease was written by Benjamin Kingman, the chairman of the parish committee and the first signer in its behalf, who was not a lawyer.

In April, 1895, Peter F. Hollywood paid the sewerage assessment, amounting to $17.68, made by the city of Brockton on the demised premises, and received from the defendant an agreement that the amount of the assessment on the demised premises should be repaid to Hollywood, his heirs or assigns, at the termination of his lease in 1904, it being considered a permanent improvement.

On March 19, 1904, Hollywood notified the defendant that he had the assignment mentioned above of a portion of the premises described in the original lease, and requested the defendant to extend the lease to him for a reasonable time, and on reasonable terms, or to pay him a just and reasonable sum for the buildings and improvements which he had put on the premises.

The defendant refused to extend the lease, or to pay to Hollywood any sum for buildings and improvements which had been erected on the premises.

On March 23, 1904, Hollywood died, leaving a will, and the plaintiffs were appointed executors of his will.

The court may draw any necessary inferences of fact from the facts stated.

The copy of the lease marked A was as follows:

" This Indenture, made this twenty-first day of March in the year one thousand eight hundred and fifty-four, by and between the First Parish in North Bridgewater (a religious society duly incorporated by the Commonwealth of Massachusetts) of the first part, and Winthrop S. Baker, of Yarmouth, in the County of Barnstable, Gentleman, and Rufus P. Kingman, of North Bridgewater, Merchant, of the second part.

" Witnesseth, That the said Parish doth hereby (by their Committee duly authorized) lease, demise and let unto said Baker and Kingman to them and their respective heirs, executors, administrators and assigns, the following described lot of land with all the privileges and appurtenances to the same belonging, to them the said Baker and Kingman and their heirs and assigns, to hold for the term of Fifty years from the date hereof, the same being situated in North Bridgewater, being the Southerly portion of a lot of land owned by said Parish, and called the Parish Green, bounded, beginning at the Southeast corner of said Green on the West side of Main Street; thence Northerly in a line of said Street about one hundred and seventy-four feet, to a station ; thence Northwesterly on such a course as will in running fifteen feet intersect a line that is run parallel with and thirteen feet eight inches North from the North side of the old meeting house now standing thereon, and which old house is this day sold by said Parish to said Baker and Kingman for the sum of Twelve Hundred Twenty-six Dollars and Sixty cents as per said Parish Bill of Sale to them will appear; thence North eighty-five degrees West one hundred and eighty feet to a stake; thence North five degrees East thirty feet to a stake ; thence North eighty-five degrees West forty-nine feet six inches to the West line of said Parish lot; thence Southerly in the West line of said lot about one hundred and ninety-two feet to the Southwest corner of said Parish lot ; thence Easterly in the South line of said lot about two hundred feet to the bounds first named. And the said Parish for themselves and their succes-

sors do further covenant to and with the said Baker and King-
man, their heirs and assigns that they, the said lessees, shall
have a right of way from the Westerly part of said leased land
to and from Main Street over the land between the old and new
meeting house.   And the said Parish hereby reserve to their
own use and benefit the following described portion of the above
described lot being that part on which the parsonage house and
barn now stand, bounded, beginning at said road in the range
of a line run parallel with and three feet North from the North
side of said Parsonage house one hundred and ten feet to a
stake; thence South seven degrees West fifty-eight feet to
a stake; thence South eighty-three degrees East one hundred and
eighty feet to said road; thence Northerly by the road fifty-eight
feet to the first named reserved line.   And the said Parish also
reserve to the owners such sheds as now stand upon said leased
lot which sheds are to be removed therefrom within a reasonable
time.   And the said Parish for themselves and their successors
and assigns do hereby covenant to and with the said Baker and
Kingman and their heirs and assigns, that the said Parish is
lawfully seized and possessed of said premises, that they are
free from all incumbrances and reserves except as above re-
served, and that they have good right to lease the same as afore-
said to the said Baker and Kingman and that the said Parish
will Warrant and Defend the free use and occupancy of said
premises during the term of this lease to the said lessees, and
their heirs and assigns together with the appurtenances to the
same belonging to be used and occupied as they, the said Baker
and Kingman may deem proper.

"And the said Parish further agrees and covenants to and
with the said Baker and Kingman, their heirs and assigns that
when this lease shall have terminated they, the said Parish or
their successors will then extend the lease thereof to the said
Baker and Kingman or their heirs and assigns on reasonable
terms for a reasonable time, or pay to them, the said Baker and
Kingman and their heirs or assigns a just and reasonable sum
for such buildings and improvements as they, the said lessees
may have put thereon.

"And the said Winthrop S. Baker and Rufus P. Kingman,
their heirs, executors, administrators and assigns do hereby

covenant to and with the said Parish and their successors that they will pay to said Parish or their successors the sum of one hundred dollars annually at the end of each and every year, and all taxes that may be lawfully assessed thereon.   Commencing to estimate rent of said lot from first of November next, making the first rent fall due on the first day of November, which will be in eighteen hundred and fifty-five and so at the end of each and every succeeding year, until this lease shall 'expire by the terms thereof, or shall be otherwise cancelled by the mutual agreement of the parties.   And now the respective parties hereto each for themselves, their successors, heirs and assigns do mutually promise each 'to the other well and truly to keep and perform all the covenants and agreements aforesaid according to the true intent and meaning thereof."

Here followed the attesting clause and the signatures and seals of the parties.

The copy of the assignment marked B was as follows :

" This Indenture, made the fifteenth day of March A. D. 1904 between Fred B. Howard, of Brockton, in the Commonwealth of Massachusetts, Executor of the Will of Rufus P. Kingman and Fred Southworth, of said Brockton, Administrator *de bonis non* of the estate of Winthrop S. Baker, parties of the first part, and Peter F. Hollywood, of said Brockton, party of the second part :

" Witnesseth : That in consideration of one dollar paid by the party of the second part to the party of the first part, the receipt whereof is hereby acknowledged, they, the said Fred B. Howard, as such Executor, as aforesaid, and the said Fred Southworth, as such Administrator, as aforesaid, do hereby assign unto the said Peter F. Hollywood, his executors, administrators and assigns, the following described portion of the hereditaments and premises comprised in and demised by a certain written lease from the First Parish in North Bridgewater to Winthrop S. Baker and Rufus P. Kingman, dated the twenty-first day of March, in the year one thousand eight hundred and fifty-four and recorded with Plymouth Deeds, Book 264, Page 31, of certain lands situate on the West side of Main Street, in said Brockton : said portion of the premises is described as follows :

"A certain lot of land on the West side of Main Street, in said Brockton, bounded North by land occupied by the First Parish in said Brockton, East by Main Street, South by Green Street, and West by land occupied by Loring W. Puffer. The West line of the above described lot being eighty (80) feet Westerly from Main Street.

"To Have and to Hold the same unto the said Peter F. Hollywood, his executors, administrators and assigns henceforth for the residue of the term of fifty (50) years granted by said lease at the rent thereby reserved and subject to the covenants by the Lessees and conditions therein contained and henceforth to be performed and observed."

Here followed the attesting clause and the signatures and seals of Howard, executor, and Southworth, administrator *de bonis non* as above described.

The Superior Court gave judgment for the defendant; and the plaintiffs appealed.

*W. A. Reed & R. W. Nutter,* for the plaintiffs.

*F. M. Bixby,* for the defendant.

LORING, J.  It is stated in the agreed statement of facts that the lease made in 1854 by the First Parish in North Bridgewater was a lease "of a vacant lot of land." But it appears from the lease, a copy of which is annexed to the agreed facts, that the land leased was "the southerly portion of a lot of land owned by said Parish, and called the Parish Green," and that "the old meeting-house now standing thereon" was "sold by said Parish" to the lessees for $1,226.60. These provisions of the lease contradict and control this statement in the agreed statement of facts.

The building here in question was erected by Hollywood, who appears to have been in possession at that time as an assignee of the lease of the portion of the land demised. It is stated in the agreed facts that he was then a sublessee "for a time equal to the remainder of the term of the original lease." We do not see how under these circumstances Hollywood could have been a subtenant.

One who acquires the whole estate of a lessee in a portion of the land covered by the lease is an assignee and not a subtenant. *Daniels* v. *Richardson,* 22 Pick. 565.  *Congham* v. *King,* Cro.

Car. 221, 222; *S. C. sub nomine Conham* v. *Kinge*, 1 Roll. Abr. 522, and *sub nomine Conan* v. *Kemise*, Jones, 245. *Wollaston* v. *Hakewill*, 3 M. & G. 297. *Cook* v. *Jones*, 96 Ky. 283. See also the cases collected in 18 Am. & Eng. Encyc. of Law, (2d ed.) 657, note 1.

But if Hollywood was a subtenant when he erected the building here in question, he became on March 15, 1904, an assignee of the lease so far as that portion of the demised land was concerned on which the building in question was erected, and the lease did not expire until March 21, 1904.

The covenant sued on has to do with the termination of the original lease, and in our opinion it is a covenant to pay to the lessees and their assignees on the termination of the lease (in case the lease is not extended as therein provided) "a just and reasonable sum for" any buildings and improvements which may have been put on the demised land during the term of the lease. The defendant has argued that the covenant is to be restricted to buildings put upon the land by the lessees and does not include buildings put upon it by subtenants or assignees of the lessees. We can conceive of no possible reason for such a discrimination having been made by the parties to the lease, and we think that such a construction is too narrow a construction of the word "lessees." If that were the true construction of the word "lessees" here, the covenant in question in the earlier part of the lease that "the said lessees shall have a right of way," and the covenant to "warrant and defend the free use and occupancy of said premises . . . as they, the said Baker and Kingman may deem proper," would have to be restricted in the same way. On the other hand the lease is a lease to "said Baker and Kingman to them and their respective heirs, executors, administrators and assigns," and the covenant in question is in terms a covenant "with the said Baker and Kingman, their heirs and assigns."

The defendant has argued that this covenant does not run with the land, relying on the second resolution in *Spencer's case*, 5 Coke, 16 a, b, in support of that contention. But the covenant is with the lessees and their assigns, as we have just said, and for that reason it does run with the land within the rule laid down in the second resolution in *Spencer's case;* and it is

not necessary to consider *Minshull* v. *Oakes*, 2 H. & N. 793; *Gorton* v. *Gregory*, 3 B. & S. 90; *Elliott* v. *Johnson*, 8 B. & S. 38; *Stockett* v. *Howard*, 34 Md. 121.

The defendant has argued that to require the parish to pay for this building is to divert its funds from the corporate purposes to which they are devoted.

But that is not a fair statement of the question of *ultra vires* which we have here. The question of *ultra vires* in the case at bar is this: Where a parish has no further use for an old meeting house and the land on which it stands, abutting on a business street, is it *ultra vires* to let the land to a lessee who agrees to buy. the meeting house which has been superseded, the parish agreeing to pay on the termination of the lease "a just and reasonable sum for such buildings and improvements" as are put upon the land during the lease?

We are of opinion that such a lease is not *ultra vires*. The case comes within the class of cases referred to in *Davis* v. *Old Colony Railroad*, 131 Mass. 258, at p. 272: "Thus a corporation may let or mortgage property lawfully held by it under its charter, and not immediately needed for its own business. *Simpson* v. *Westminster Hotel Co.* 8 H. L. Cas. 712. *Brown* v. *Winnisimmet Co.* 11 Allen, 326. *Hendee* v. *Pemberton*, 14 Allen, 381."

As the case must stand for further proceedings, it is proper to add that in our opinion the plaintiffs are entitled to the sum of $3,267.98, stated in the agreed facts.

*Judgment reversed.*