MARY F. PETERS & others *vs.* HENRY B. STONE.

Worcester.   October 2, 1906. — November 26, 1906.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & RUGG, JJ.

*Covenant.   Landlord and Tenant.   Words,* "Improvements."

The lease of a farm for three years, containing no restriction as to its assignment, gave the lessees the right to purchase the premises at any time during the term at their option, at a different price named for each of the three years. The lessees covenanted " to make all repairs needed or required by them to revert to the owners," and also " to make improvements on said premises to the value of at least $1,000 during said term and to leave the same therein at the end of said term if they do not purchase the premises." Within three months the lessees assigned the lease to a corporation organized for the purpose of selling poultry, which took possession of the premises and erected and occupied certain poultry buildings. Neither the original lessees nor their assignee attempted to exercise the option to purchase the premises. There was a default in the payment of rent, and the lessors brought a summary process against the lessees for possession of the premises and recovered judgment. The assignee voluntarily vacated the premises while the summary process was pending. A creditor of the assignee attached the poultry buildings as its property, obtained judgment, sold the buildings on execution and purchased them at the execution sale. In a suit in equity brought by the lessors against the purchaser at the execution sale to enjoin him from removing the buildings from the plaintiffs' land, it was *held*, that the covenant in the lease, to make improvements on the premises during the term and to leave such improvements thereon at the end of the term if the lessees did not purchase the premises, ran with the land and was binding on the assignee of the lease ; therefore that the buildings upon their erection became part of the realty and no title passed to the defendant under the execution sale, and the plaintiffs were entitled to a decree.

BILL IN EQUITY, filed in the Superior Court on August 4, 1905, by the owners of a farm of about fifteen acres situated on both sides of Malden Street in Worcester, praying for an injunction to restrain the defendant from removing certain

poultry buildings from the premises of the plaintiffs which had been attached and levied on by the defendant as personal property of the Park Villa Farm Company, a corporation, and had been purchased by the defendant at the execution sale.

An interlocutory injunction was issued and the case was referred to á master. Later the case was heard by *Stevens*, J. upon the master's report.

The following facts were found by the master:

On July 15, 1903, the plaintiffs, while owning a fruit and vegetable farm in Worcester, executed and delivered a lease thereof to H. S. Park, T. H. Clarkson and C. R. Macomber for the term of three years from the first day of August, 1903. A copy of the lease is printed below.

On October 3, 1903, the lessees, Park, Clarkson and Macomber executed and delivered an assignment of the lease to the Park Villa Farm Company, a corporation established under the laws of the State of Maine. A copy of the assignment also is printed below. The plaintiffs were not parties to this assignment, made no agreement to accept the corporation as their tenant in lieu of the original lessees, and made no release of the tenants named in the lease therefrom or from any covenant contained therein. The Park Villa Farm Company was incorporated on August 24, 1903, for the purpose of raising and selling poultry.

Under the assignment the Park Villa Farm Company took possession of the leased premises and erected structures thereon for carrying on its business. All of these buildings were constructed of spruce with spruce rafters; the roofs were covered with spruce boards and roofing paper. They all stood upon posts sunk in the ground, except an incubator building which was on a stone foundation and under which was a cellar. The heating apparatus was in this cellar and pipes extended to the brooding houses. All of these buildings were erected by the Park Villa Farm Company, with the knowledge of the lessors while that company was the assignee of the lease, with the intention and for the purpose of carrying on the business of that corporation.

Default having been made in the payment of the rent reserved in the lease, the lessors, the plaintiffs in this suit, began an action of summary process against Park, Clarkson and Mac-

omber in the Central District Court of Worcester, to recover possession of the leased premises.

In that action Park, Clarkson and Macomber appeared by counsel and filed an answer. The plaintiffs recovered judgment against them for possession of the premises.

No execution for possession issued in the case, the Park Villa Farm Company having voluntarily vacated the premises during the pendency of the action. None of the buildings erected by the corporation ever were removed.

Under a contract with the Park Villa Farm Company the defendant in this suit sold and delivered to that corporation the building paper which was used in the construction of the buildings. The corporation did not pay him for it, and on November 4, 1904, he began an action against the corporation in the Central District Court of Worcester to recover damages for nonpayment of his claim and attached the poultry buildings as the property of the corporation. On June 9, 1905, he recovered judgment against the corporation; on June 12, 1905, execution issued; on July 5, 1905, the buildings were levied on and on July 31, 1905, they were sold on execution and were purchased by the judgment creditor, the defendant in this suit.

The lease referred to above was as follows:

"This indenture, made the fifteenth day of July, in the year of our Lord one thousand nine hundred and three.

"Witnesseth, that we, Mary F. Peters, Lewis A. Peters, both of Worcester in the Commonwealth of Massachusetts, John E. Peters, of Gardner, in said commonwealth, and Charles A. Peters, of Moscow, State of Idaho, do hereby lease, demise and let unto H. S. Park, T. H. Clarkson and C. R. Macomber, all of Worcester in the Commonwealth of Massachusetts, a certain farm, with the buildings thereon, containing about fifteen acres, situated on both sides of Malden Street, in said Worcester, now occupied by William Brackett, and bounded north by land of Fred L. Chamberlain, east by land of C. H. Ellsworth, south by land of John Hand and by Brooks Street and west by land of C. D. Thayer.

"It is understood and agreed by and between the parties hereto that the said lessees shall have the right to purchase said premises at any time during the term of this lease at their option. The lessors hereby agree to give to the lessees upon

the terms hereinafter stated a warrantee deed of the aforesaid premises in fee simple absolute to them and their heirs and assigns to their own use and behoof forever. If they purchase the same during the first year of said term the price is to be forty-one hundred ($4,100) dollars, if during the second year forty-two hundred ($4,200) dollars, and if during the third year forty-three hundred ($4,300) dollars, and if said lessees shall purchase said premises during said term and pay for the same, the rent herein reserved shall thereupon cease and the lessees shall be credited with the sum of two ($2.00) dollars for each and every month's rent by them theretofore paid, to be deducted from the purchase price of said premises. The said estate to be free and clear of all incumbrances.

" To have and to hold to the said lessees, their heirs and assigns for the term of three years from the first day of August, nineteen hundred and three, yielding and paying therefor the rent of seven hundred and twenty ($720) dollars. And said lessees do promise to pay the said rent in equal monthly payments of twenty ($20) dollars each, the first of said payments to be made on the first day of September, 1903, and a like payment on the first day of each and every month thereafter during said term, and to quit and deliver up the premises to the lessors, or their attorney, peaceably and quietly, at the end of the term, in as good order and condition, reasonable use and wearing thereof, fire and other unavoidable casualties excepted, as the same now are, or may be put into by the said lessors, and said lessees agree to make all repairs needed or required by them to revert to the owners, and to pay the rent as above stated, during the term, and also the rent as above stated, for such further time as the lessees may hold the same, and not make or suffer any waste thereof; or make or suffer to be made any alteration therein, but with the approbation of the lessors thereto, in writing, having been first obtained; and that the lessors may enter to view and make improvements, and to expel the lessees, if they shall fail to pay the rent as aforesaid, or make or suffer any strip or waste thereof and said lessees agree to make improvements on said premises to the value of at least one thousand ($1,000) dollars, during said term and to leave the same therein at the end of said term if they do not purchase the premises. And

provided, also, that in case the premises, or any part thereof during said term, be destroyed or damaged by fire or other unavoidable casualty, so that the same shall be thereby rendered unfit for use and habitation, then, and in such case, the rent herein before reserved, or a just and proportional part thereof, according to the nature and extent of the injuries sustained, shall be suspended or abated until the said premises shall have been put in proper condition for use and habitation by the said lessors.

" In witness whereof, we hereunto set our hands and seals this fifteenth day of July, in the year one thousand nine hundred and three."

Here followed the signatures of the lessors and of the lessees, and an acknowledgment of the instrument by one of the lessors before a justice of the peace.   The assignment executed on the back of the lease was as follows:

" Worcester, Mass. Oct. 3rd. 1903.

" We hereby assign, set over and transfer to the Park Villa Farm Company, a corporation duly organized by law and having a place of business in Worcester, Mass. the within lease and all rights and benefits to be derived therefrom and subject to all the conditions and covenants by the lessees to be performed.

"H. S. Park.   T. H. Clarkson.   C. R. Macomber."

The defendant asked the judge to rule as follows:

1.  The covenant in said lease, to wit, " and said lessees agree to make improvements on said premises to the value of at least one thousand ($1,000) dollars during said term and to leave the same therein at the end of said term if they do not purchase the premises," is a personal covenant, does not run with the land, is binding upon the lessees only, and the assignees of the lease are not bound by it.

2.  The acceptance of the assignment by the assignee corporation not being in writing, cannot be proved or is not enforceable as against it, because of the statute of frauds. [Not argued.]

3.  The buildings seized upon execution and sold at execution sale to the defendant Stone are personal property, and the buildings were in law in possession of the attaching officer from the

time of the attachment, divested the title of the debtor corporation and operated as a transfer of title.

4. The corporation which placed the buildings on the land for its purposes as assignee of the lease, had the right to remove them within a reasonable time not only as against the lessee but also as against the lessor after vacating the premises.

5. The agreement of the lessees to have improvements on the land is merely a covenant collateral to the land, does not concern the thing demised, and the assignee of the lease should not be charged with such agreement; that equity will not enforce an affirmative covenant not running with the land against the assignee of the lease whether he had notice of the covenant or not.

6. The plaintiffs are estopped by the ejectment proceedings brought in December, 1904, from claiming that the lessees were not in possession prior thereto. The rights of the defendant Stone are as of November 5, 1904, when the attachment was made, a month before the ejectment proceedings were instituted. [Not argued.]

7. The plaintiffs have been guilty of laches in bringing this suit. [Not argued.]

8. The buildings placed on the land by the corporation were trade fixtures and removable as such, under the principles of law which apply thereto and the corporation which erected them had the right to remove them.

9. Upon the pleadings and the master's report, as a matter of law, the finding should be for the defendant.

The judge refused to rule as requested by the defendant, and entered a decree for the plaintiffs. The defendant alleged exceptions. He also appealed from the decree, but insisted " upon his exceptions rather than his appeal." The points raised by the refusal of the requests numbered 2, 6 and 7 were not argued.

*W. C. Mellish,* for the defendant.

*E. F. Thompson,* ( *C. S. Dodge* with him,) for the plaintiffs.

BRALEY, J. The rights of the parties to the buildings in controversy depend upon the construction of the lease given by the plaintiffs to the assignors of the judgment debtor, under whom the defendant claims ownership. This instrument by apt words

demised a farm of about fifteen acres, with the buildings, for the term of three years at a fixed rental, with an agreement that the lessees might purchase the premises at a price to be adjusted in amount according to each year of their occupation. The usual covenants were inserted, which included an agreement by the lessees " to make all repairs needed or required by them," which at the end of the term were " to revert to the owners." At the close of this recital the following provision appears: " said lessees agree to make improvements on said premises to the value of at least one thousand . . . dollars during said term and to leave the same therein at the end of said term if they do not purchase the premises." While inartificially expressed the language employed was sufficient to create a binding obligation as no precise form of technical words is required to create a covenant, but corresponding expressions, or a clear manifestation of such an intention are all that is required. *Trull* v. *Eastman*, 3 Met. 121, 124. And it is evident that the lessees expressly charged themselves with the performance of a promise to increase the value of the property to this amount, which also must be understood as forming part of the consideration for the lease.

The corporation, however, to which the lessees assigned their estate was not a party, and would not be bound to its performance except by privity of estate, but in general covenants defining the manner in which the demised premises shall be enjoyed or dealt with run with the land and bind the covenantee. They also bind an assignee as to his rights in the real estate, even where assigns are not named, when the beneficial act to be performed relates solely to increasing the value of the premises as they exist at the date of the lease. *Morse* v. *Aldrich,* 19 Pick. 449. *Hurd* v. *Curtis,* 19 Pick. 459, 462. *Patten* v. *Deshon,* 1 Gray, 325, 329. *Easterby* v. *Sampson,* 6 Bing. 644. *Vyvyan* v. *Arthur,* 1 B. & C. 410. *Congleton* v. *Pattison,* 10 East, 130. *Spencer's case,* 5 Coke, 16 a. The word "improvements" is of broad signification, covering not only repairs and additions to buildings in existence at the time of the demise, but also new buildings subsequently erected, and if in this covenant assigns are not again mentioned they are named in the preceding habendum. *South Congregational Meeting-house* v. *Hilton,* 11

Gray, 407, 408. *Kabley* v. *Worcester Gas Light Co.* 102 Mass. 392, 394. *Haven* v. *Adams*, 8 Allen, 363. *Daggett* v. *Tracy*, 128 Mass. 167. *Schenley's appeal*, 70 Penn. St. 98, 102. *Stockett* v. *Howard*, 34 Md. 121. *Low* v. *Innes*, 4 DeG., J. & S. 286. It is then a question of construction whether the immediate parties intended to define and control only their personal obligations, or whether they also intended by this covenant to bind whomsoever might succeed to their respective estates, and this question must be determined from the language and purpose of the entire instrument. *Duncklee* v. *Webber*, 151 Mass. 408. *Jones* v. *Parker*, 163 Mass. 564, 568. *Carpenter* v. *Pocasset Manuf. Co.* 180 Mass. 130, 132. *Hollywood* v. *First Parish in Brockton*, 192 Mass. 269. *Masury* v. *Southworth*, 9 Ohio St. 340. *Clegg* v. *Hands*, 44 Ch. D. 503, 517, 518. Upon the acceptance of the assignment the assignee succeeded not only to the burdens but to the benefits attached to the leasehold, among which was the right to buy the premises, found in the covenant of the lessors, which ran with the land and could have been enforced by the corporation. *Van Horne* v. *Crain*, 1 Paige, 455. *Hagar* v. *Buck*, 44 Vt. 285. By engaging to make improvements upon the conditions named, while enhancing the value of the reversion, the lessees also would receive the beneficial use of the buildings during the remainder of the term as well as increasing the value of the premises for the betterment of themselves, or their assigns, if ultimately either elected to purchase, with the further benefit of a fixed rebate to the purchaser of the rent which had been paid for the preceding months. These various provisions when taken in connection with the silence of the lease as to any restriction prohibiting the lessees from assigning their estate, which included the right to acquire the fee by purchase, leads to the reasonable conclusion that the covenanting parties intended that all the covenants regarding the manner in which the demised premises should be used and enjoyed, or improved by the lessees, should not only bind them personally as to their interest in the premises, but also those who by assignment might succeed to their estate. *Hollywood* v. *First Parish in Brockton, ubi supra.* Upon the delivery of the assignment the corporation entered into possession and erected and occupied the buildings, which, because of this covenant, upon their erec-

tion at once became part of the realty.   During the pendency of a suit by the plaintiffs to recover possession, the corporation without having taken advantage of the option to purchase abandoned the premises before the expiration of the term, and as neither at the time of the attachment nor of the levy of the execution were the buildings the personal property of the judgment debtor, the defendant acquired no title at the sale.   *Westgate* v. *Wixon,* 128 Mass. 304, 307.   *Aldrich* v. *Husband,* 131 Mass. 480.

*Exceptions overruled ; decree affirmed.*