## JAMES B. WESTGATE vs. FRANCIS H. WIXON.

Bristol.   Oct. 29, 1879. — Feb. 27, 1880.   COLT & AMES, JJ., absent.

A., who was in possession of a parcel of land under a bond for a deed, erected a barn upon the land, the sills of which rested in part on large stones imbedded in the soil, and in part upon the soil itself. There was no agreement between A. and the owner of the land as to whose property the barn should be in case A. did not fulfil the obligations of the bond. After a breach of the bond, but while A. was in possession of the land, the barn was attached by a creditor of A., and removed from the land. *Held,* in an action of tort in the nature of trover, by the owner of the land against the attaching officer, after a demand, that the barn was part of the realty, and was not subject to attachment; and that the action could be maintained.

TORT. The declaration contained two counts. The first was in the nature of trover for the conversion of a barn. The second was for breaking and entering the plaintiff's close, removing a barn annexed to the freehold, and converting it to the defendant's use. The answer contained a general denial; and alleged that the barn was the property of John H. Abbott, and was duly attached by the defendant, a deputy sheriff, on a writ against Abbott in favor of Benjamin Barker and others. The case was submitted to the Superior Court on an agreed statement of facts, which, after stating that the pleadings were made a part thereof, proceeded as follows:

On April 2, 1877, the plaintiff executed to John H. Abbott, a bond for a deed of a parcel of land in Fall River, the condition of which recited that the plaintiff 'had bargained and sold to Abbott a certain parcel of land for the sum of $3700, and that Abbott had agreed to pay $30 a month, on the first of each month, until the whole sum with interest was paid, and was to pay taxes and insurance, with the privilege of paying the principal sum at any time and demanding a deed; and on breach of any of the conditions, the obligation was to be void.

Abbott was in actual occupancy of the premises at the time of the alleged tortious acts of the defendant. The defendant seized the building as the property of Abbott, on a writ in favor of Benjamin Barker and others against Abbott. No question is made as to the legality of the writ and service, or that Abbott was indebted to the plaintiffs in the writ. At the time of the

attachment, Abbott had defaulted in the obligations imposed upon him in the bond for a deed, in that he had not paid the taxes on the estate; but no measures had been taken by the plaintiff to evict him, or to assume possession of his estate in any way.

The building in question was a barn built in October 1877 by Abbott on the plaintiff's land, described in the bond, and was used for the stabling of horses. It rested upon the ground; four of the corners were supported upon large stones, which were imbedded in the soil, and on which there were sills. The floor first lay upon the stones and blocks of wood, and at some places the soil was cleared away. The sills under the floor lay upon large stones, with two joists in the middle and running under the barn on all sides. On two sides, the sills were imbedded in the ground as they had sunk in, but not otherwise. Under the barn was an opening eighteen by ten feet, which was begun for a cellar, but which was given up on account of the leaking of water. There was no other underpinning except the above. The dimensions of the barn were about twenty-three by twenty-five feet. At the time the barn was built by Abbott, he did not ask permission of the plaintiff, nor had he asked or received from the plaintiff the right to remove the barn in case of an abandonment of the contract in the bond for a deed. When the barn was nearly done, the plaintiff visited the premises, and saw it, and made no objection to its staying on his land or being completed.

When the defendant made the attachment, the plaintiff made a proper demand for it upon him, and the building was moved off the premises by the defendant after this demand. The attachment was made and building moved on March 7, 1878.

On the above facts and pleadings, if the plaintiff could maintain the action, judgment was to be entered for him in the sum of $330, with interest from the date of writ; otherwise, judgment for the defendant.

The Superior Court ordered judgment for the plaintiff; and the defendant appealed to this court.

*M. Reed,* for the plaintiff.

*H. K. Braley,* (*M. G. B. Swift* with him,) for the defendant.

MORTON, J. Upon the facts of this case, the Superior Court was justified in finding that the barn, for the removal of which

this suit was brought, was a part of the realty, and was therefore not attachable as the personal property of Abbott.

As a general rule, buildings are a part of the realty, and belong to the owner of the land on which they stand. Even if built by a person who has no interest in the land, they become a part of the realty, unless there is an agreement by the owner of the land, either express or implied from the relations of the parties, that they shall remain personal property. *Webster* v. *Potter*, 105 Mass. 414, and cases cited. The facts of this case do not take it out of this general rule. There was no express agreement by the plaintiff that Abbott might remove the barn, and the relations of the parties were not such as that the law will imply such an agreement. Abbott was in the occupancy of the land under a bond, by which the plaintiff agreed to convey the land to him upon the performance of certain conditions stipulated therein. While he thus occupied, Abbott built the barn in question. The legal title to the land was in the plaintiff, but Abbott had an equitable interest in it, a right to obtain a title to the soil upon performance of the conditions of the bond. He was not therefore a mere stranger, who erected a building upon land of another with the consent of the owner, in which case an agreement that he could remove it might more easily be implied. Nor can he be regarded as a tenant of the plaintiff, so that the liberal rules in regard to fixtures, which prevail between a lessor and lessee, can be applied. The essential features of a tenancy upon which those rules rest are wanting; he was not under any liability to pay rent, and he was not compelled to surrender the estate at a fixed time, as upon the expiration of the term; but, upon performing the conditions of the bond, all the additions and improvements made by him would enure to his own benefit. *King* v. *Johnson*, 7 Gray, 239. The relations between Abbott and the plaintiff more nearly resemble those existing between mortgagor and mortgagee, in which case any additions made or fixtures annexed to the realty enure to the benefit of the mortgagee.

The barn in question was a substantial structure. It is clear from the facts agreed that Abbott built it, not for any temporary purpose, but for the permanent improvement of the land, which he expected to become his property according to the terms of

the bond. When built, it became a part of the realty, and enured to the benefit of the plaintiff as additional security for the performance of the conditions of the bond. Abbott had no right to remove it, and his creditors had no right to attach it as his personal property. *Milton* v. *Colby*, 5 Met. 78. *Eastman* v. *Foster*, 8 Met. 19. *Murphy* v. *Marland*, 8 Cush. 575.

The defendant contends that the plaintiff cannot maintain his action in the present form, because at the time he removed the barn Abbott was in the occupancy of the premises.

To maintain an action of tort in the nature of trover or trespass *de bonis asportatis*, it is sufficient if the plaintiff proves a title to, and the right to the immediate possession of, the goods converted or carried away. *Woodruff* v. *Halsey*, 8 Pick. 333. *Ayer* v. *Bartlett*, 9 Pick. 156. *Fairbank* v. *Phelps*, 22 Pick. 535. *Codman* v. *Freeman*, 3 Cush. 306. In the case at bar, the bond does not contain any stipulation that Abbott, the obligee, is to enter into the present possession of the premises, and the facts agreed do not state how he came into the occupancy. But we assume, as fairly to be inferred, that he entered under the bond, by virtue of the license implied from its terms, and not by virtue of any independent license or title. This being so, his right to the possession ceased when there was a breach of the condition of the bond, and the plaintiff had an immediate right of possession. There had been a breach of the conditions before the defendant removed the barn. It follows that, at the time the defendant unlawfully removed the barn, the plaintiff was the owner of the land and barn, with the right of immediate possession. When the barn was severed from the realty, it ceased to be real estate and became personal. The plaintiff still remained the owner of it, entitled to the immediate possession, and could maintain an action of tort in the nature of trover, either against the person who unlawfully severed it, or any other person who, after it was severed, converted it to his own use. *Riley* v. *Boston Water Power Co.* 11 Cush. 11. *Phillips* v. *Bowers*, 7 Gray, 21.

*Judgment affirmed.*