## MILLER v. WADDINGHAM et al.*

## No. 13,899; January 19, 1891.

### 25 Pac. 688.

**Fixtures.—Houses Built on Mud-sills Resting upon the Soil,** which is not disturbed, are affixed to the land within the terms of Civil Code, section 660, declaring that "a thing is deemed to be affixed to the land when it is . . . . permanently resting upon it, as in the case of buildings."

**Fixtures.—Such Houses Built by a Contractor for a Vendee in** possession, who has paid part of the price for the land, and who, being unable to pay for the houses, turns them over to the contractor, cannot be removed from the freehold by the latter. Distinguishing Hendy v. Dinkerhoff, 57 Cal. 3.

**Fixtures.—A Vendee Who has not Paid the Entire Purchase** Price cannot claim the right to remove houses built by him on the land on the principle that, since equity regards that as done which ought to be done, he should be deemed the trustee of the purchase money for the vendor, and the equitable owner of the land, with the right to deal with it as he pleases.

**Fixtures.—A Vendee Who, While in Possession Under an Ex-** ecutory contract of purchase, has built houses on the land before paying the entire purchase price, may be enjoined by the vendor from removing them.

APPEAL from Superior Court, San Bernardino County.

Waters & Gird for appellant; Harris & Gregg for respondents.

HAYNE, C.—This was a suit for an injunction to restrain the defendants from removing six buildings from the plaintiff's land, and for damages for injuries sustained in that regard. The trial court gave judgment for the defendants, and the plaintiff appeals upon the findings. The findings show the following case: The plaintiff, who was the owner of two blocks of land in "Ontario Colony," and of half of the streets in front thereof, made a contract to sell the land to the defendant's assignor, who entered into possession, and paid the sum of $9,000 "on said contract." While in posses-

---

*For subsequent opinion in bank, see 90 Cal. 377, 27 Pac. 750.

sion he caused the houses in question to be erected, but, being unable to pay the contractor, he made over the houses to him, and the latter sold them to the defendants, who proceeded to move them. It does not clearly appear whether the houses were erected upon the plaintiff's blocks of land, or upon the streets in front thereof. But the counsel have assumed (what in all probability was the fact) that the houses were upon the blocks mentioned; and, following the lead of counsel, we have so assumed for the purposes of this opinion. "Said houses were built on redwood mud-sills of two-inch by six-inch timber; said mud-sills resting upon the soil. The soil was not disturbed in building or removing said houses. Nothing was ever said about the houses being built so they could be removed." It does not appear what was the price to be paid to the plaintiff for the land. The inference is that only a part of the price was paid. Assuming that such was the case, it does not appear whether the unpaid portion was due at the time of the removal of the houses, or at the commencement of the suit. The vendee is still in possession, and the contract "is subsisting and not disaffirmed."

The first question to be considered is whether the houses were affixed to the land in such a manner as to become a part of the realty. The term "fixture" is used in different senses. Sometimes it is used in its general sense, of a thing which is affixed to land: Merritt v. Judd, 14 Cal. 63, 64. Sometimes it is used to designate a thing which can be severed from land after having been affixed to it. In this sense it is a term "denoting the very reverse of the name": 1 Chit. Gen. Pr., p. 161. Less frequently it is used to designate a thing which cannot be removed after having been affixed to the land: Ewell, Fixt., p. 4, and note. But, whatever may be the true signification of the term, it is manifest that (with certain exceptions, such as heirlooms and the like) the thing must first be affixed to the land, in a legal sense, before any question as to its removal can arise. If not affixed to the land in any sense, its owner may move it about at pleasure. The rule of the common law was that a thing was not to be deemed affixed to land unless fastened to it in some manner. And in Pennybecker v. McDougal, 48 Cal. 160, it was held that a cabin set on wooden blocks not attached to the soil was personal property. But the value of the cabin was only $25, and it

must have been more or less of a temporary structure. In New York and other states the common-law rule was relaxed so as to include things permanently resting upon the soil, though not fastened thereto. Thus, in Snedeker v. Warring, 12 N. Y. 175, it was held that a statute resting upon a pedestal in front of a building was a part of the realty; the court saying: "A thing may be as firmly affixed to the land by gravitation as by clamps or cement." And see Strickland v. Parker, 54 Me. 266; Cavis v. Beckford, 62 N. H. 229, 13 Am. St. Rep. 554. And this principle is embodied in section 660 of the Civil Code, which provides that "a thing is deemed to be affixed to land when it is . . . . imbedded in it, as in the case of walls; or permanently resting upon it, as in the case of buildings." In this case the houses seem to have been of a permanent character (they cost $4,100); and we think that, under the code, they must be considered as having been "affixed" to the land.

This being so, the question arises whether the successors in interest of the vendee had any right to sever the houses from the land. Upon this question many modern authorities lay great stress upon the intention with which the thing was affixed (Vail v. Weaver, 132 Pa. 363, 19 Am. St. Rep. 598, 19 Atl. 138; Walker v. Flouring-mill Co., 70 Wis. 96, 35 N. W. 332; Schaper v. Bibb, 71 Md. 149, 17 Atl. 935; Docking v. Frazell, 38 Kan. 423, 17 Pac. 160); while others say that the intention is of secondary importance: Collamore v. Gillis, 149 Mass. 581, 14 Am. St. Rep. 460, 5 L. R. A. 150, 22 N. E. 46. But, whatever may be the controlling principle, the preponderance of authority is to the effect that a building of a permanent character, erected by a vendee in possession under an executory contract of purchase, is part of the realty, and cannot be removed by him or his successors in interest, in the absence of an agreement to that effect. In Ogden v. Stock, 34 Ill. 522, 85 Am. Dec. 332, the action was replevin for a house which had been erected by the vendee in possession under a contract of purchase, who, after failing to perform his contract, sold the house to the defendant, who removed it. The court gave judgment for the plaintiff, saying that it could not be presumed that the vendee, when he affixed the house to the soil, had any intention of removing it. In Hemmenway v. Cutler, 51 Me. 407, a question

arose, upon a writ of entry, as to the effect of an omission, from a levy, of a barn erected by a vendee in possession under a bond for a deed. If the barn was real estate, the omission rendered the levy void; otherwise, it was valid. The court held that the levy was void, and Appleton, C. J., delivering the opinion, said: "It is well settled that erections made by a mortgagor, or one occupying land under a bond for a deed, are to be regarded as real estate, and are not removable by the occupant as personal property": See, also, Kingsley v. McFarland, 82 Me. 231, 17 Am. St. Rep. 473, 19 Atl. 442. In Westgate v. Wixon, 128 Mass. 304, the action was for damages for the removal of a barn erected on the plaintiff's land by one Abbott, who was in possession under a bond for a deed. He failed to perform the conditions of the bond, but remained in possession, and the barn was removed by the defendant under a writ issued in a suit by a creditor. It was held that the plaintiff should recover, and the court, per Morton, J., said: "As a general rule, buildings are part of the realty, and belong to the owner of the land on which they stand. Even if built by a person who has no interest in the land, they become a part of realty, unless there is an agreement by the owner of the land, either express, or implied from the relations of the parties, that they shall remain personal property. . . . . The barn in question was a substantial structure. It is clear from the facts agreed upon that Abbott built it, not for any temporary purpose, but for the permanent improvement of the land, which he expected to become his property according to the terms of the bond. When built, it became a part of the realty, and inured to the benefit of the plaintiff as additional security for the performance of the condition of the bond. Abbott had no right to remove it, and his creditors had no right to attach it as his personal property." The foregoing were cases at law. The same rule is applied in equity. In English v. Foote, 8 Smedes & M. (Miss.) 444, the suit was to foreclose a mechanic's lien for work upon a house erected by a vendee in possession under a contract of purchase which he failed to perform. It was held that, under the statute in force in that jurisdiction, the lien extended only to the interest of the person who caused the house to be erected, and that the vendee had no interest in the house after it was affixed to the land. The court, per Clayton, J., said: "As a general

rule, whatever is annexed to the freehold becomes a part of it, and cannot be severed from it.   There are many exceptions to the rule, but it applies with all its strictness between vendor and vendee.''   In McLaughlin v. Nash, 14 Allen, 136, 92 Am. Dec. 741, the suit was for an accounting after dissolution of partnership.   Before the formation of the partnership the plaintiff was in possession under a bond for a deed, and had affixed certain articles to a building which was upon the land. When the partnership was formed, the defendant purchased an interest in the articles mentioned.   The plaintiff failed to perform the condition of the bond, and after the dissolution of the partnership the owner leased the premises to the defendant.   It was held that such of the articles as had been permanently affixed to the building were part of the realty, and the court, per Gray, J., said: ''The plaintiff had not the same right to remove fixtures annexed by him to the land so occupied by him without paying rent to the owner, under a contract for its purchase, as an ordinary tenant would have against his landlord. . . . . His rights in this respect were no greater than those of a vendor or mortgagor against his vendee or mortgagee'': See, also, Allen v. Mitchell, 13 Tex. 373.   The rule between vendor and vendee to which the court refers in the passage last quoted is that in relation to things affixed by the vendor before the contract of purchase, or before a conveyance, if there is no contract, in which case the construction leans in favor of the vendee: Fratt v. Whittier, 58 Cal. 126, 41 Am. Rep. 251.   The decisions above quoted are in relation to things affixed by the vendee after the contract of purchase.

It is to be observed that the case before us is to be distinguished from that of erections by a person in possession under a revocable license.   The rule as to licenses was laid down in Little v. Willford, 31 Minn. 178, 17 N. W. 282.   But the court was careful to say: ''A distinction is to be noted between a license and a contract for the purchase of land under which buildings are erected.   In the latter case the builder's rights are determined by the nature of his contract, and upon his default the fixtures go with the land.''   The same distinction is stated by Cooley (Cooley on Torts, sec. 429); and, as to the general rule, see 1 Washburn on Real Property, 5th ed., p. 7.   In most of the cases above cited, the vendee, after making the erections, failed to perform his con-

tract. But, so far as the question of fixtures is concerned, this circumstance is not material. If a building be once affixed to land so as to become a part of the realty, it does not change its character by subsequent nonaction on the part of the person who affixed it. The case of Hendy v. Dinkerhoff, 57 Cal. 3, 40 Am. Rep. 107, is not in conflict with the above decision. There the thing affixed to the realty did not belong to the person who affixed it. Such person, therefore, had no right, as against the owner of the thing, to make it a part of the realty; and the decision was that the owner of the realty stood in the shoes of the person who did the affixing, and had no greater rights than the latter had. It is true that in the case before us the houses were affixed to the land by a contractor; but he affixed them under a contract with the vendee, and for his benefit, and of course must be taken to have consented to the affixing, and to all its consequences. It results that the houses were part of the realty, and that the vendee had no greater right to them than to any other part of the property.

The defendants, however, advance two arguments, which apply not merely to the fixtures, but to the whole property. In the first place, they invoke the maxim that equity regards that as done which in good conscience ought to be done, and argue that after the contract the vendee was the trustee of the purchase money, and the owner in equity of the land, and could deal with it as he saw fit. As above stated, this argument has no reference to fixtures as distinguished from the land itself, but applies to the whole property. Nor does it depend upon whether the vendor has permitted the vendee to take possession before performance; for, under the rule relied upon, the vendee is as much the equitable owner where he has not taken possession as where he has. Nor does the argument depend upon whether the unpaid purchase money is due or not; for, by the terms of the rule, it applies as soon as the contract is made. If the argument is good at all, it requires that, as soon as a contract of purchase is made, the vendee should in every case be entitled to enter upon the enjoyment of the property, and be allowed to deal with it as he sees fit. But this is certainly not the law. The maxim referred to is not of universal application: 1 Story's Equity Jurisprudence, sec. 64g. It was established by courts of equity to attain equitable ends, and it will not be applied to accomplish re-

sults which are inequitable; as, for example, to enable a vendee to waste or destroy the property before the performance of his contract. Before such performance, whatever interest he has is subject to be devested upon nonperformance; for in case of nonperformance the vendor is not compelled to foreclose a lien upon the property, but may rescind or retake possession: Hannan v. McNickle, 82 Cal. 126, 23 Pac. 271; Connolly v. Hingley, 82 Cal. 643, 23 Pac. 273; Hoffman v. Remnant, 72 Cal. 1, 12 Pac. 804; Troy v. Clarke, 30 Cal. 419. The interest of the vendee must therefore be conditional. Non constat that he will be able to perform the condition when the time for the performance arrives; and a court of equity will not take his performance for granted to such an extent as to allow him to waste or destroy the property. Nor does it make any difference that the vendor has permitted him to take possession. Such permission does not carry with it a right to waste or destroy the property in the case of a vendee any more than it does in the case of a tenant. The question involved was decided in the case of Crockford v. Alexander, 15 Ves. 138, in which Lord Eldon enjoined a vendee in possession from cutting timber, although he admitted that the vendee was, in equity, the owner of the estate. The case would be different if the vendee had performed all the conditions of his contract. In such case he would be the absolute owner of the equitable estate, and the vendor would have merely the dry legal title, which he would be compelled to transfer when required, and which he would not in the meantime be allowed to use in opposition to the interests or wishes of the vendee. But this would not be by reason of any presumed or supposititious performance by the vendee, but because he had actually performed. As above stated, the record does not show clearly whether the vendee has paid all the purchase money or not; but the inference from what is stated, and from the argument of counsel, is that he has not. And, as the defense is based upon an equity in opposition to the legal title, it was incumbent upon the defendants to make the fact appear: Arguello v. Bours, 67 Cal. 450, 8 Pac. 49.

In the next place, it is contended that the position of a vendor after an executory contract of purchase is analogous to that of a mortgagee; and that the rule that a mortgagee cannot have an injunction against the removal of a portion of

the mortgaged premises, without showing that his security would thereby be impaired, applies here. This is but a variation of the preceding point. It is, in substance, saying that the vendee will be allowed to waste and destroy the property unless it be shown that the vendor's lien will thereby be impaired; and it depends upon the proposition that the position of the vendor is like that of a mortgagee. There are some respects in which the analogy holds; more especially in the case of a common-law mortgage, where the mortgagee has the legal title. But the likeness is by no means perfect. The vendor has not a mere lien for the security of money, which he must foreclose upon nonperformance by the vendee. As shown by the cases cited under the preceding head, he may, upon such nonperformance, rescind the contract and retake possession. He has therefore, in addition to the legal title, a reversionary interest in the equitable estate, conditional upon nonperformance by the vendee, which interest will be protected in equity. The vendee on his side has, before performance, only a conditional equitable interest for equitable purposes; and, as above stated, a court of equity will not take his performance for granted to such an extent as to enable him to grasp at once at the enjoyment of the property.

It results that the judgment is not sustained by the findings; but, in the somewhat uncertain condition of the record, we do not think that final judgment should be ordered for the plaintiff. We therefore advise that the judgment be reversed, and the cause remanded for a new trial.

We concur: Belcher, C.; Vanclief, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment is reversed and the cause remanded for a new trial.