[S. F. No. 14515. In Bank.—April 20, 1932.]

SELDEN C. SMITH et al., Petitioners, v. STATE BOARD OF CONTROL et al., Respondents.

Warren Olney, Jr., Allan P. Matthew, J. Richard Townsend and McCutchen, Olney, Mannon & Greene for Petitioners.

U. S. Webb, Attorney-General, and Robert W. Harrison, Chief Deputy Attorney-General, for Respondent.

CURTIS, J.—Application for writ of mandate directed to the respondent State Board of Control and the individual members thereof to approve the claim of petitioners for the agreed purchase price of $2,400 for certain music text-books supplied by petitioners to the State Board of Education upon the latter's order. This order was given in pursuance of a written agreement or contract between the State Board of Education and petitioners following the formal adoption of a series of text-books printed and published by petitioners for use in the elementary schools of this state under its system of furnishing free text-books to be used in its elementary schools. A stipulation of facts has been signed by the parties and filed herein.

Petitioners are copartners and are doing business under the firm name of Ginn and Company. They are, under said firm name, engaged in the business of printing and publishing text-books and supplying the same to the schools of the various states of this country. Their principal place of business is in the city of Boston, state of Massachusetts, with a branch office and resident partner in the city of San Francisco.

In November, 1930, the State Board of Education advertised for bids for supplying music text-books for the elementary schools of the state up to and including the sixth grade. Said notice provided for the submission of bids, for the sale or lease of the rights to publish and distribute in this state materials for such text-books, and likewise contained a provision in the following words, to wit: "Alternative bids for supplying completed books, as specified above, in carload lots, f. o. b. Sacramento, Los Angeles and San Francisco, will also be received." In response to the notice calling for bids the state board received written proposals or bids for supplying said music text-books from the following firms: Ginn and Company, American Book Company, Silver, Burdett and Company, and Hinds, Hayden & Eldridge, Inc. None of the music text-books included in any of said bids was entirely written, compiled, printed and published in the state of California, and none of said bids contemplated that any of the music text-books included therein, if adopted by said State Board of Education, would be entirely written, compiled, printed and published in this state.

Upon receipt of said bids, the State Board of Education submitted the same for its investigation and approval to the curriculum commission of this state. It appears from a written report thereafter filed with the State Board of Education by the curriculum commission that there was a sharp difference of opinion among the members of the commission as to the respective merits of the series of text-books published by petitioners and those published by Silver, Burdett and Company. Upon a tentative vote being taken upon the question as to which of the two series would be recommended by the commission, six members thereof voted in favor of the series published by Silver, Burdett and Company and five members voted in favor of the series published by petitioners. But upon the final vote the commission

unanimously recommended to the State Board of Education the acceptance in part of the bid by Ginn and Company and in part the bid of Silver, Burdett and Company. Upon the receipt and filing of this recommendation of the curriculum commission with the State Board of Education the board followed the recommendation of said commission and accepted that part of the bid of Ginn and Company and that part of the bid of Silver, Burdett and Company which had been approved and recommended by said curriculum commission.

The bid of Ginn and Company, in so far as it was accepted, offered to compile, print and publish text-books known as "Two-Part Music", "Intermediate Music" and "Adventures in Music" of the Music Education Series, and to deliver the same in carload lots at the points designated in the notice calling for bids, for the sum of forty-eight cents per copy. The bid of Silver, Burdett and Company was made in the alternative as permitted by said notice inviting bids; that is, this firm offered to sell the text-books published by it outright to the state, to be delivered in carload lots as specified in said notice calling for bids, or to permit upon a royalty basis the use by the state of the copyright and lease of plates from which their text-books were prepared and published, with the right to the state to use said plates in the production and publication of said text-books. It might be said here that the bid of Ginn and Company contained no such alternative right and said firm refused to permit the plates from which their text-books were produced to be used by the state for any purpose.

In conformity to the resolution adopting the bid of Ginn and Company, a written contract was thereafter entered into between the state of California and said company, embodying the accepted portions of the bid presented by said company. The State Board of Education also entered into a separate contract with Silver, Burdett and Company for the rental of the plates from which were printed and published the series of text-books covered by the accepted portion of the bid of this firm. Thereafter Ginn and Company received a written order from the State Board of Education for 5,000 copies of the music text-books which had been adopted by the State Board of Education and which were to be supplied under the terms of the written contract with petitioners.

Pursuant to said order, said company delivered to the State Board of Education at Sacramento 5,000 copies of the specified text-books that were accepted by said State Board of Education.

There is no contention but that after the delivery of said text-books to the State Board of Education and within the time provided by law, the petitioners duly filed with the respondent Board of Control its duly verified claim and statement of facts approved by the state superintendent of schools, requesting and demanding payment for the text-books delivered by petitioners as aforesaid, and requesting and demanding that said State Board of Control approve said claim and that upon such approval the state comptroller draw his warrant on the state treasurer in favor of petitioners for the amount of said claim. The State Board of Control has refused to approve said claim and contends that under all the facts and circumstances surrounding said transaction and in view of the law applicable thereto, the State Board of Education was without the power or authority to enter into or bind the state of California by the contract entered into with petitioners.

■ The power and authority of the State Board of Education to provide text-books for the use of the elementary schools throughout the state is fixed and determined by section 7 of article IX of the Constitution and certain sections of the School Code of this state. Section 7 of article IX of the Constitution reads as follows:

"The legislature shall provide for the appointment or election of a state board of education, and said board shall provide, compile, or cause to be compiled, and adopt, a uniform series of text-books for use in the day and evening elementary schools throughout the state. The state board may cause such text-books, when adopted, to be printed and published by the superintendent of state printing, at the state printing office; and wherever and however such text-books may be printed and published, they shall be furnished and distributed by the state free of cost or any charge whatever, to all children attending the day and evening elementary schools of the state, under such conditions as the legislature shall prescribe. The text-books so adopted shall continue in use not less than four years, without any change or alteration whatsoever which will require or necessitate the furnishing

of new books to such pupils, and said state board shall perform such other duties as may be prescribed by law. The legislature shall provide for a board of education in each county in the state. The county superintendents and the county boards of education shall have control of the examination of teachers and the granting of teachers' certificates within their respective jurisdictions.''

There is nothing obscure or ambiguous in the meaning of this section. By the first sentence thereof it is made the duty of the State Board of Education to adopt a uniform series of text-books for the use of the elementary schools of the state. The text-books adopted may either be compiled by the State Board of Education, or the board may cause the same to be compiled, or the board may otherwise provide said text-books for use in the elementary department of the school. Whether the books required shall be compiled or otherwise provided by the board is left to the discretion of the State Board of Education. Under the power given to it by this section of the Constitution, the State Board of Education has the authority to compile or cause to be compiled all the text-books required in the elementary department of the schools, or it may provide said text-books in some other manner than by compiling or causing them to be compiled. It may lease the plates from some person, or firm or corporation, that has compiled a suitable text-book, or it may purchase said text-books outright. There may possibly be other methods which the board may adopt in providing the required text-books, but none has been suggested by either party hereto. Whether other methods may or may not be followed is not material, as there is nothing in this section of the Constitution which makes it obligatory upon the board to pursue any particular method. On the other hand, by the plain terms of the section, the board is given the power to provide said text-books in such manner as the board in the judgment of its members may determine. Under this power it has the right to purchase such text-books for the uses and purposes designated in said section.

The next sentence of the section of the Constitution under consideration provides that the board ''may cause such text-books when adopted, to be printed and published by the superintendent of state printing, at the state printing office''. Under this provision of the section is it made the

duty of the Board of Education to cause all text-books adopted by it to be printed in the state printing office? The answer to the question depends upon whether we shall construe the words ''may'' to mean ''must''. We deem it unnecessary for us to enter into any lengthy discussion of the question as to when the word ''may'' is, and when it is not, to be construed to mean ''must''. We think upon reading this section as a whole that it clearly appears that it was the intention of the framers of this section of the Constitution and of the people who adopted it to give to the word ''may'' its ordinary meaning and not to construe it, as it is in some cases construed, to mean ''must''. This section of the Constitution starts out with the mandatory direction to the legislature that it ''shall provide'' for a State Board of Education. Then follows the provision that the Board of Education ''shall provide . . . a uniform series of text-books''. The next sentence is the one with which we are concerned, in which it is provided that the board ''may cause such text-books . . . to be printed . . . at the state printing office''. Then follow directions that said text-books ''shall be furnished'' free of cost; said text-books so adopted ''shall continue'' for a period of four years; the state board ''shall perform'' other duties; the legislature ''shall provide'' for a board of education in each county; and the county boards of education ''shall have control'' of the examination of teachers, etc. The only reasonable conclusion to be drawn from a reading of the whole section is that the word ''may'' was designedly used in its ordinary meaning and not as a mandatory direction to the State Board of Education to have all text-books adopted by it printed in the state printing office.

This construction of this provision of the section is aided somewhat by the further requirement of the section immediately following said provision and which reads as follows: ''wherever and however such text-books may be printed and published, they shall be furnished . . . by the State free of cost''. The plain inference to be drawn from the words ''wherever . . . such text-books may be printed and published'' is that they are not necessarily to be printed and published in one designated place, or in one establishment, but may be printed elsewhere as the board may determine. As so construed there is nothing in this section of

the Constitution which makes it mandatory upon the State Board of Education to have all text-books adopted by it printed and published at the state printing office. On the contrary according to the construction which we have given said section, the board is authorized to provide by purchase completed text-books or those which have already been printed and published at the time of their purchase. This construction of the Constitution gives full force and effect to all of its terms. ■ It is the duty of the courts in construing the Constitution as well as a statute to so construe its provisions that some effect shall be given to every part if reasonably possible. (*Wheeler* v. *Herbert*, 152 Cal. 224, 236 [92 Pac. 353]; *Marye* v. *Hart*, 76 Cal. 291, 293 [18 Pac. 325]; *French* v. *Teschemaker,* 24 Cal. 518, 539.)

■ The sections of the School Code to which our attention is directed and which it is claimed have some bearing upon the question of the power of the State Board of Education to enter into the contract with petitioners are sections 6.240, 6.270 and 6.273. Section 6.240 reads as follows:

"It shall be the duty of any board of education, school board, board of trustees, official, officer or any other person elected or appointed to carry out the provisions of the laws of the State of California, relating to the public schools of said state and vested with the power of designating text-books to be used in the said public schools, in so designating such text-books, unless otherwise provided by general law, to give preference to any text-book on any given subject of public instruction which is entirely written, compiled, printed and published in the State of California, to the exclusion of any such text-book entirely or partly written, compiled, printed, and published outside of the State of California; *provided,* it shall appear to them that such text-book so as aforesaid produced in the State of California, shall be of superior or equal educational merit to, and can be procured at the same or less cost than any such text-book, so as aforesaid, entirely or partly written, compiled, printed and published outside of the State of California."

This section simply provides that in the selection of text-books for the schools of the state, the State Board of Education will give preference to any text-book entirely written, compiled, printed and published in the state of California,

provided the text-books produced in the state of California possess superior or equal educational merit and can be secured at equal cost as "any such text-book" produced outside of the state. As none of the text-books included in any of said bids made to the State Board of Education was entirely written, compiled, printed and published in the state of California this section of the School Code is not called in question by any act of the state board in accepting the bid of the petitioners. Even in the case where the plates of a publishing house are leased to the state with the right to use the same in the production of text-books, as was contemplated by the alternative bid of Silver, Burdett and Company, text-books produced from said plates by the state, are not entirely written, compiled, printed and published in this state. On the other hand, it is quite evident that such text-books are entirely written outside the state.

Sections 6.270 and 6.273 of the School Code are as follows:

"6.270. The state board of education shall have power and it shall be its duty to compile in whole, or in part, and to manufacture such text-books as are now in use; to compile, or cause to be compiled and manufacture such other additional text-books or books as it may deem necessary or proper for use in the elementary schools of the state, as provided by this Code; to purchase books when necessary, or lease plates, maps, engravings, or copyright matter for use in manufacturing such text-books; contract for, or lease copyrights for use in compiling, printing, or publishing such books; to provide for the payment of royalties or for the leasing of plates or making the whole or any part of a book, and to do any or all things that may be necessary for the purpose of procuring a uniform series of text-books for use in the elementary day and evening schools of this state."

"6.273. Whenever any plates, maps, or engravings of any publisher or author are adopted for use, or whenever any books have been purchased, as hereinbefore provided, the state board of education shall enter into a contract for not less than four years nor more than eight years for the use of the same in the elementary day and evening schools of the state, and shall require a good and sufficient bond of the owner or owners of such books, plates, maps, or engravings

under a written guarantee that the same shall be kept, revised and free from all errors and up to date as may be required by the state board of education.''

There is no question but that these sections of the School Code contemplate a purchase of school text-books by the State Board of Education. By section 6.270 the power is expressly given to said board ''to purchase books when necessary'' and by section 6.273 it is provided that when ''any books have been purchased'' the State Board of Education shall enter into a contract for not less than four nor more than eight years for the use of said books in the elementary schools of the state. Respondents make the point, however, that while the State Board of Education is given practically plenary power to compile and manufacture text-books required for use in the schools when it comes to deal with the power to purchase text-books the language of the code is ''to purchase when necessary''.

Respondents concede that the discretion to determine when this necessity to purchase text-books arises, is in the State Board of Education, but they contend that the board abused its discretion by entering into the contract with the petitioners for the purchase of the text-books therein agreed to be purchased without inquiry of the state printer whether the text-books required could be printed and published in the state printing office, and without inquiry throughout the state whether this class of text-books could not be procured within the state. This contention is readily answered. As already stated the State Board of Education duly advertised in all respects as required by the laws of this state for bids and proposals to furnish the required text-books, and although in answer to the notice asking for bids a number of such bids, to be exact four, were presented to the board, none of such bids proposed or offered to furnish a text-book, which was entirely written, compiled, printed and published in this state. Respondents do not suggest what further inquiry or investigation the state board could have made in order to ascertain whether said text-books could be procured in this state. After advertising for bids and receiving none for any text-book entirely written and published in this state, the state board was warranted in concluding that it was necessary for it in order to

secure the needed text-books to purchase them outside of the state.

As to the necessity of the State Board of Education inquiring of the state printer as to whether said text-books could be printed and published in the state printing office, such an inquiry would have availed nothing, for the reason that no text-books of the character required by the board had been compiled by it, or by any other board, person or publishing house in this state. There was nothing therefore about which the state board could inquire of the state printer. ██ Respondents, however, take the position that as Silver, Burdett and Company by their bid agreed to permit the state the use of copyright and lease of plates of the text-books published by that firm, it was the duty of the State Board of Education to ascertain from the state printer whether the state printing office was properly equipped to use said plates and by their use print and publish all the text-books required in the particular department of the state schools in which was proposed to use the text-books for which bids were called. This position is untenable. In the first place, the bid of Silver, Burdett and Company accepted by the State Board of Education did not include or cover all the text-books which the State Board of Education decided to purchase at that time. Each of these two companies offered in its bid a complete series of text-books as requested by the notice calling for bids. The state board selected and adopted part of those offered by Silver, Burdett and Company, and part from the series offered by the petitioners. That it had the right to make such a selection there can be no question. As to the selected text-books to be furnished by petitioners they were to be printed and published by petitioners and furnished to the state board in their completed form. As they were not to be published by the state, and could not be for the reason that the plates from which they were printed could not be leased or otherwise procured from petitioners, any inquiry as to the ability of the state printer to print them would have been futile. Then, again, the bid of Silver, Burdett and Company did not propose to furnish books entirely written, compiled, printed and published in this state. The text-books proposed to be furnished by this firm in the lease of its plates, as we have already seen, were entirely written outside of this

state. They were not, therefore, entitled to the preference given by section 6.240 to text-books entirely written, compiled, printed and published in this state. It is apparent, we think, that the State Board of Education did not abuse its discretion in deciding that it was necessary to purchase the text-books embraced in the contract with the petitioners.

While a stipulation of facts signed by the parties to this action was presented and filed herein, it is admitted that it does not cover or purport to cover all of the matters embraced within the entire pleadings of the parties herein. It covers all the issues made by the petition and so much of the return as purports to be a direct answer to said petition. It does not, however, cover certain new matters set forth in the return. This condition of the record was called to our attention at the time of the argument, and it was then agreed that the stipulation of facts already filed should be considered by the court as covering all matters to which it relates, and that should the additional matters alleged in the return be deemed material, the court would order a reference to determine the further facts as alleged in the return and not covered by the stipulation. We have carefully gone over the stipulation of facts and the answer and return of the respondents, and we are satisfied that no reference is necessary to determine the additional issues made by the return. In brief, these new matters set up by said return and answer relate to the condition of the state printing office and show the nature of its equipment, the number of its employees, and the character of the work this office is capable of performing. In fact, the return and answer show that the state printing office is sufficiently equipped to print and publish all necessary text-books used in the schools of the state, including those ordered by the State Board of Education from the petitioners. The return further shows that the state printing office did in fact print and publish the text-books offered by Silver, Burdett and Company from the plates leased to the state by said company; that the printing and publishing of said text-books by the state printing office was done in a manner entirely satisfactory to the State Board of Education and that the cost of said text-books, by having them printed and published in the state printing office from leased plates, was less than the cost

of the same text-books had they been purchased from the firm of Silver, Burdett and Company, and less than the cost of text-books purchased from petitioners.

It is manifest from the views already expressed that these allegations of the return and answer, not covered by the stipulation of facts filed herein, are concerning matters not material to any issue in this proceeding. As the Constitution of the state clothes the State Board of Education with the power to provide the necessary text-books for the elementary schools of the state and gives to said board the authority to either compile such text-books or to have them printed and published, or to purchase them outright in their printed and published state, and as the Board of Education decided, under this power to purchase text-books, that the series of text-books published by petitioners was more suitable for said schools than any other series offered in said bids, it was an entirely immaterial matter whether the state printer could print and publish some other series of text-books in the state printing office, and it was also immaterial whether the printing of this different series of text-books in the state printing office could be done for less money than it would cost the state to purchase the series published by petitioners. It was the duty of the State Board of Education under the Constitution and statutes of this state governing their action, to provide for the use of the schools of the state the series of books which in the judgment of its members would be most suitable for that purpose. Having determined that question and decided in favor of text-books published by petitioners, its decision in that respect was final, and could not be affected in any manner by a showing that some other series of text-books, could have been printed and published under state direction at a less cost to the state.

It follows from the views herein expressed that the State Board of Education had the power under the laws of this state to enter into the contract with petitioners for the purchase of the text-books covered by their contract; that said contract is in all respects legal and binding upon the state and that petitioners are entitled to enforce the same. No question is made but that mandate is the proper remedy to enforce the rights of petitioners to have their claim based upon said contract paid by the officers of the state. In our

opinion such writ should issue as prayed for by the petitioners, and it is so ordered.

Preston, J., Seawell, J., Shenk, J., Waste, C. J., and Langdon, J., concurred.